THIRD DIVISION
JUNE 11, 2008

1-06-2449

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 14830 |
| | ) | |
| LEOBARDO DELVILLAR, | ) | Honorable |
| | ) | Fred G. Suria, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The defendant, Leobardo DelVillar[1], entered into a negotiated guilty plea and was convicted

of aggravated unlawful use of a weapon by a felon and sentenced to a four-year prison term with a

recommendation for boot camp. The defendant filed a postplea motion to withdraw his plea as

involuntary, alleging that the trial court had failed to advise him of the potential consequences which

he could face as a noncitizen of the United States if he pled guilty to the charge in question. The trial

court denied the defendant's postplea motion and the defendant now timely appeals to this court.

BACKGROUND

At 10:45 p.m. on June 22, 2003, Irene Martinez Alonos flagged down Chicago police

officers at 4300 South California Avenue and pointed out a car whose occupants had just broken the

rear windshield of her 1998 Nissan Maxima. The police stopped the car pointed out by Alonos, at

---

[1]Other spellings of defendant's name that appear in the record are Leorardo and Del
Villar.

4251 South California Avenue, and found the defendant inside the car as well as a fully loaded revolver protruding in plain view from the center console of the front seat. The defendant told the police officers that the gun was in his car because he had just bought it. The police officers then conducted a protective pat down and a second loaded revolver was recovered from the defendant.

The defendant was initially charged with three counts of aggravated unlawful use of a weapon by a felon and two counts of unlawful use of a weapon by a felon. The State and the defendant reached an agreement and the defendant pled guilty to one count of aggravated unlawful use of a weapon by a felon. The State's recommendation for the defendant was four years in the Illinois Department of Corrections, with a recommendation for boot camp. Before the court accepted the defendant's guilty plea, the court went through the following admonishments:

"THE COURT: Is anybody forcing or coercing you to give up your

right to remain silent or to change your plea to guilty?

DEFENDANT: No.

THE COURT: You are doing both these things freely and voluntarily?

DEFENDANT: Yes.

THE COURT: And you are a citizen of the United States?

DEFENDANT: Yes."

Having found that the defendant knowingly, freely, and voluntarily executed each waiver, the

court accepted the defendant's guilty plea. The court imposed the agreed-upon sentence and

provided the required postplea admonishments concerning the defendant's right to withdraw his plea and to appeal under Supreme Court Rule 605(c) (210 Ill. 2d R. 605(c)).

On June 6, 2006, the defendant filed a motion to withdraw his guilty plea as involuntary and to vacate his conviction. In his motion, the defendant stated that he was a resident alien, not a United States citizen, and that the trial court was required under section 113-8 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/113-8 (West 2006)) to advise him that certain consequences, such as deportation,[2] could occur upon his guilty plea which was in essence a conviction.

At the hearing on the postplea motion, defense counsel argued that the defendant had not been properly admonished pursuant to section 113-8 of the Code. The assistant State's Attorney argued that there was nothing in the transcript regarding the defendant's immigration status, with the exception of questioning by the court as to whether the defendant spoke English, to which the defendant and his attorney answered affirmatively.

The trial court then reviewed the portion of the transcript in which the defendant had informed the court that he was a United States citizen. Defense counsel told the court that he thought the defendant was a United States citizen. The court said, "He lied to the Court." Defense counsel replied that he did not know if the defendant had lied or if he had understood the question. The court then stated:

---

[2]Current immigration laws have replaced the "out-of-date" term "deportation" with the term "removal." See Bogdan, Guilty Pleas by Non-Citizens in Illinois: Immigration Consequences Reconsidered, 53 DePaul L. Rev. 19, 64 (2003). We shall use the term "deportation" because it is the term employed by section 113-8 of the Code.

"I'm going to do this. I'm going to respectfully deny the request. I'll accept your statement that you are a citizen of the United States. I gave you the opportunity to tell me you were not. I could have advised you what you could have done. You did not give me that opportunity. I'll not let you withdraw your guilty plea. By the time the appeal comes back you'll probably have served the time.

* * *

What I should really do is also set a contempt today and hold him in contempt and add a sentence to it for his lying in open court. I gave [you] the opportunity to finish that job,[3] taking your word you'd be back. You did finish the job. I gave you that opportunity. Now you're back here BS-ing the Court. I don't know whether you're a citizen or not."

Defense counsel then stated:

"He informed me he was a resident alien at the time. I think he's trying to express to me that that was the source of his confusion, your Honor."

The trial court denied the defendant's motion to withdraw the guilty plea.

---

[3]During the November 2, 2005, guilty plea proceeding, defendant requested, and the trial court granted, the defendant additional time prior to surrender in order to finish building a garage pursuant to a contract which the defendant had with a customer.

4

1-06-2449

On appeal, the defendant contends that he was not a United States citizen and that the trial court's failure to advise him in accordance with section 113-8 of the Code, concerning the potential effect of a guilty plea and conviction, requires remandment for proper guilty plea admonishments and the opportunity to file a new motion to withdraw his guilty plea.

The State responds that the trial court did not abuse its discretion in denying the defendant's postplea motion, because the defendant informed the court that he was a United States citizen and never provided any proof to the contrary.

ANALYSIS

The denial of a defendant's motion to withdraw his guilty plea is usually left to the discretion of the trial court. A reviewing court will not disturb the trial court's decision absent an abuse of discretion. People v. Hirsch, 312 Ill. App. 3d 174, 179, 726 N.E.2d 672, 676 (2000). However, where the trial court hears no testimony and the evidence before the court is strictly documentary evidence, " ' "the rationale underlying a deferential standard of review is inapplicable, and a reviewing court will make an independent decision on the facts." ' " (Citation) People v. Bilelegne, 1-06-3213, slip op. at 4 (March 31, 2008), quoting Northwest Diversified, Inc. v. Mauer, 341 Ill. App. 3d 27, 33, 791 N.E.2d 1162,1167 (2003). In the instant case, at the hearing on the defendant's motion to withdraw his plea of guilty, although the record shows that he was present, there was no testimony by the defendant. During the hearing on the motion, the assistant State's Attorney and defense counsel discussed whether the defendant was truthful about his citizenship and his earlier comments to the court. The respective lawyers made their arguments and the court reviewed the written motion and portions of the transcript of the earlier guilty plea proceeding. Thus, we review

5

this issue *de novo.*

Prior case law left noncitizens with no notice of possible deportation consequences following a guilty plea or conviction. See People v. Huante, 143 Ill. 2d 61, 69-71, 571 N.E.2d 736, 740-41 (1991) (neither the trial court nor defense counsel was required to advise the defendant of so-called collateral consequences of a guilty plea; deportation was found to be a collateral consequence). See also People v. Williams, 188 Ill. 2d 365, 372, 721 N.E.2d 539, 544 (1999) (a guilty plea was not invalidated by the trial court's failure to advise the defendant of the effect on his immigration status or other so-called collateral consequences of the plea).

Subsequent to Huante and Williams, Public Act 93-373, §5 (Pub. Act 93-373, eff. January 1, 2004), now section 113-8 of the Code was enacted. 725 ILCS 5/113-8 (West 2006). Section 113-8 became effective on January 1, 2004, prior to the guilty plea in this case, and provides as follows:

> "Advisement concerning status as an alien.
>
> Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:
>
> 'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113-8 (West 2006).

We interpret statutes by employing the well-established principles of statutory construction.

1-06-2449

"The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 503-04, 732 N.E.2d 528, 535 (2000). Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. People v. Davis, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 479, 639 N.E.2d 1282, 1287 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. Davis v. Toshiba Machine Co., America, 186 Ill. 2d 181, 184-85, 710 N.E.2d 399, 401 (1999)" as cited in People v. Wooddell, 219 Ill. 2d 166, 170-71, 871 N.E.2d 117, 120 (2006). As has been established by all of the above cases, the rule regarding statutory construction is well settled in Illinois law. Thus, "[w]e will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent." J.S.A. v. M.H., 224 Ill. 2d 182, 197, 863 N.E.2d 236, 245 (2007).

Prior to the January 1, 2004, when a defendant entered a guilty plea, there was no requirement that the Court give an admonishment regarding the possibility of deportation or other impact upon immigration status. Since the new statute's enactment, there has been only been one Illinois case which has interpreted it. In People v. Bilelegne, 1-06-3213 (March 31, 2008), the second division of this court, with one justice dissenting, interpreted section 113-8 of the Code as being directory rather than mandatory. The facts in Bilelegne are similar to the facts in the instant case. In Bilelegne, the defendant was charged with two misdemeanor counts of domestic battery.

7

After negotiating a plea agreement in lieu of jail time, the defendant pled guilty. During the plea hearing the court warned the defendant of the consequences of a plea of guilty and the defendant indicated that he understood. However, the court did not mention the specific admonishment outlined in section 113-8 of the Code. The defendant subsequently filed a motion to withdraw his guilty plea and vacate the judgment. The defendant alleged that at the time he pled guilty, the court failed to inquire of him as to whether he was a citizen of the United States. He argued that the significance of which was that a guilty plea or conviction pursuant to section 113-8 of the Code is a deportable offense for a noncitizen and, therefore, his plea was not entered into knowingly and intelligently. The trial court denied the defendant's motion to vacate his plea of guilty, finding that section 113-8 of the Code was directory as opposed to mandatory. On appeal the majority agreed with the trial court. One justice dissented finding that the statutory language is mandatory.

The majority in Bilelegne partially relied on People v. Robinson, 217 Ill. 2d 43, 838 N.E.2d 930 (2005), in concluding that the use of the word "shall" in the statute was directory rather than mandatory. In Robinson, the supreme court held that when a statute expressly prescribes a consequence for the failure to obey its provision, it is very strong evidence that the legislature intended that provision to be mandatory. Robinson, 217 Ill. 2d at 54, 838 N.E.2d at 936. The Bilelegne court reasoned that since section 113-8 of the Code does not provide a consequence in the event the admonishment is not given, the court must look to the legislative history of section 113-8 for guidance.

Before its enactment, the language of the bill which ultimately became section 113-8, was redrafted a number of times. Initially, the bill contained language with respect to the consequences

8

if the court failed to give the admonishment. It was then redrafted without those consequences, however, the word "shall" remained in the bill. In explaining the changes, Senator Silverstein, one of the bill's sponsors, stated:

> "Senate Bill 43 basically says that before a plea is given in a felony or a misdemeanor case, the court *must* admonish the defendant that a plea could result in deportation or exclusion from the – admission to the United States or deny naturalization. We gutted the bill. We – this will just be an advisement by the court. I'll be happy to answer questions." (Emphasis added.) 93d Ill. Gen. Assem., Senate Proceedings, March 19, 2003, at 4 (statements of Sen. Silverstein).

Similarly in the Illinois House of Representatives, Representative Delgado stated:

> "Senate Bill 43 will do the following: previous[ly] sought pleas of guilty, pleas of guilty but mentally ill, and nolo contenders, the court *must* advise the defendant that [if] he or she is not a U.S. citizen, that the plea that they make may affect his or her INS status. Under current law, Illinois courts are not required to inform a noncitizen defendant pleading guilty to a misdemeanor or felony that it may affect his or her INS status. An immigrant status can or may be affected in numerous, very complex ways by the entry of a guilty plea to a criminal charge." (Emphasis added.) 93d Ill. Gen. Assem., House Proceedings, May 7, 2003, at 72-73 (statements of Rep.

9

Delgado).

The majority in <u>Bilelegne</u> believed that the removal of the penalty for noncompliance together with Senator Silverstein's acknowledgment that the bill was gutted, and was now an "advisement" by the court, strongly suggests that the legislature did not intend the giving of the immigration consequences admonishment to be mandatory. <u>Bilelegne</u>, slip op. at 6.

On the other hand, the dissent in <u>Bilelegne</u> points out that despite removing the penalty from the bill, the legislature did not remove the word "shall" from the bill prior to its enactment. The dissenting justice opines that the fact that the word "shall" remained in the statute, after such extensive redrafting and rewording, strongly suggests that the legislature intended that courts must alert defendants contemplating a guilty plea that they should be aware of and give careful consideration to the potential consequences on immigration status. <u>Bilelegne</u>, slip op. at 9 (Hall, J., dissenting). The dissent in <u>Bilelegne</u> goes on to point out that to construe the statute as directory rather than mandatory defeats the very purpose of the statute. The dissent explains that if section 113-8 of the Code is directory, then the enactment of the legislation would, in essence, effect no change in the law because the giving of the admonishment would be entirely discretionary. This would be no different than the requirement prior to enactment of the statute. The dissent concludes that such a result would be contrary to what the legislature intended.

We agree with the dissent in <u>Bilelegne</u>. In the instant case, the trial court's statements during the defendant's motion to withdraw his guilty plea indicates that the court believed that the determination as to whether it was required to give the admonishment depended on *whether the defendant was a citizen*. Indeed it appears that the attorneys as well as the defendant all believed that

10

the admonishment was only required if it was revealed that the defendant was not a United States citizen. We do not agree with this interpretation. In looking at the plain language of the statute, there is no requirement that the admonishment is only to be given if the defendant indicates that he or she is not a United States citizen. We believe that it is the *type of plea* which triggers the application of the statute, not the immigration status. This statute was enacted after Huante and Williams and requires that the trial court give the admonishment when certain types of pleas are entered, specifically "a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense."

As discussed by the dissent in Bilelegne, our view is further bolstered by the legislative history of the statute. There were many opportunities for the legislature to remove the word "shall" and they declined to do so. Further, Representative Delgado made it clear that the legislation was being enacted to remedy an existing problem. If the admonishment is discretionary, then the problem would still exist in some situations where the trial court declines to give it for one reason or another. We do not take the fact that Senator Silverstein indicated that it is now an "advisement" to indicate that the court has an option as to whether the admonishment should be given. In explaining the bill, both Senator Silverstein and Representative Delgado clearly stated that the court *must* advise defendants of the possible consequences of their plea.

In the instant case, there is some discussion by the trial court about the information it received from the defendant in which the defendant claimed United States citizenship. However, this is of no consequence in the determination of whether the admonishment is mandatory or discretionary. The State cites People v. Arnold, 323 Ill. App. 3d 102, 751 N.E.2d 573 (2001), in

support of its contention that where the defendant has misrepresented his status to the court, he should be held to those representations. In Arnold, a minor misrepresented his age to the court as 17 years old and then pled guilty to robbery and attempted robbery. The court sentenced the minor defendant to 2 years of felony probation, 60 days in jail and 60 days of home confinement. The minor continued to misrepresent his age until he was captured after an escape from boot camp. When the court sentenced him as an adult for the escape, he then raised the issue of his age for the first time. On appeal from the court's denial of his motion to vacate his guilty plea, the defendant contended that his convictions should be vacated pursuant to the Juvenile Court Act. The appellate court rejected that claim, holding that where a defendant has been tried, found guilty and sentenced, he cannot then assert age as an issue, as the right to be prosecuted under the Juvenile Court Act has been waived. Arnold, 323 Ill. App. 3d at 106, 751 N.E.2d at 577 (2001). We find Arnold inapposite to the case before us. In the Arnold case, if the defendant had truthfully indicated that he was a minor he could have initially been prosecuted under the Juvenile Court Act. His failure to indicate that he was a minor resulted in the waiver of his rights under the Juvenile Court Act. However, in the instant case, regardless of whether the defendant indicated that he was a citizen, it is not his citizenship that triggers the admonishment required by the statute, it is the type of plea entered. Although we are in no way minimizing the defendant's behavior in misrepresenting his citizenship status to the court, this has no legal effect on what the court was required to do.

The defendant falsely told the court that he was a citizen. His defense counsel later said the defendant was confused about the meaning of the terms "citizen" and "resident alien." However, this is irrelevant because there are no distinctions in the statute for defendants who are United States

citizens or simply resident aliens. By the plain language of the statute, the defendant's status as a citizen or a noncitizen is not the trigger of the admonishments. Rather, the triggers are: a guilty plea, a guilty but mentally ill plea, or a *nolo contendere* plea. Therefore, it was not legally significant that the defendant misinformed the court that he was a citizen. Contrary to the State's argument, it was also not legally significant that the defendant failed to provide proof of his resident alien status in support of his the motion to withdraw his guilty plea. The plain language of section 113-8 of the Code required the trial court to admonish the defendant concerning the potential immigration consequences of a guilty plea. We note that in the many iterations of the language of the bill which ultimately became section 113-8, the legislators could have required trial judges to inquire of the defendant regarding immigration status before giving the admonishment. The legislators choose not to do so and enacted a statute which appears clearly mandatory on its face.

Accordingly, we hold that the admonishment in section 113-8 of the Code is mandatory in guilty plea proceedings as outlined in the language of that section.

The judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GREIMAN and THEIS, JJ., concur.