2024 IL App (2d) 230047
No. 2-23-0047
Opinion filed April 2, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-CF-608 |
| | ) | |
| DAVID A. HIETSCHOLD, | ) | Honorable |
| | ) | David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justice Mullen concurred in the judgment and opinion.
Justice Birkett dissented, with opinion.

**OPINION**

¶ 1     After a jury trial *in absentia*, defendant, David A. Hietschold, was convicted of aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2020)). The court denied defendant's motion for a new trial and sentenced him to 42 months' imprisonment. Defendant appeals, arguing that he should not have been tried *in absentia* where, at the time the court admonished him, (1) he had not been arraigned nor had he entered a not-guilty plea and/or (2) the court's admonishments did not advise him that a failure to appear at trial would constitute a waiver of his right to confront and cross-examine witnesses. For the following reasons, we agree.

¶ 2                                   I. BACKGROUND

¶ 3    Defendant was charged with two counts of aggravated battery in a public place. Initially, defendant was charged with misdemeanors, but the State later enhanced the charges to felonies. It is undisputed that defendant was never arraigned, and he never pleaded not guilty.

¶ 4    Between April 28, 2021, and July 22, 2022, defendant appeared in court nine times. On one of those dates, October 20, 2021, the court (Judge D.J. Tegeler) scheduled trial for February 24, 2022, and advised defendant that he was required to be present at trial and that, if he was not, "he could be tried in [his] absence, and if found guilty, sentenced in [his] absence." Defendant (who was present and muted on Zoom) gave a "thumbs up" to the court, reflecting that he understood.

¶ 5    On February 10, 2022, defendant's original counsel moved to withdraw, and defendant requested new counsel "to give me, you know, a fair trial." The February trial date was stricken, defendant obtained new counsel, and, on July 22, 2022, the court set a new trial date. At that time, the court (Judge Elizabeth Flood) admonished defendant:

> "[Y]ou do have a right to be present at all of your court dates.
>
> You do need to be present on both of those [trial] dates.
>
> If you fail to come to court, that would constitute *a waiver of your right to be present*, and the trial could continue without you.
>
> You could be found guilty, you could be sentenced if you don't come back to court." (Emphasis added.)

The court informed defendant, who was present via Zoom, that he needed to unmute so that the court could hear whether defendant understood. Defendant, who had been ill with the COVID-19 virus and had, as a result, been absent for a previous status hearing, unmuted his Zoom screen and replied, "Yes, Your Honor. I'm sorry. I'm very sick. I'm sorry."

¶ 6     Defendant did not appear at the new trial date on September 29, 2022. The State informed the court (Judge Elizabeth Flood) that it had searched seven hospitals, to no avail, and had also confirmed that defendant was not in custody. Accordingly, the State argued that defendant's absence was willful and that trial should proceed in his absence.

¶ 7     Defendant's counsel objected. He reminded the court that defendant had not been arraigned and acknowledged that section 113-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-6 (West 2020)) provides that a failure to arraign does not affect the validity of proceedings if the defendant proceeds to trial without objecting to the failure; however, he added, "We are objecting." Counsel explained that defendant had hired him to try to get a favorable plea but, when that did not work out, defendant became hard to contact. Nevertheless, counsel objected to trying defendant *in absentia*, where he had not been arraigned and had never pleaded not guilty. According to counsel, "[t]he statute makes it clear that if we object, that—that that arraignment has failed to his going to trial or pleading. We are objecting."

¶ 8     The State reminded the court that it had previously admonished defendant that, if he failed to appear, trial could proceed in his absence. Further, it referenced section 115-4.1 of the Code for the proposition that, if a defendant fails to appear at his or her arraignment, the court can enter a not-guilty plea on the defendant's behalf. See *id.* § 115-4.1.

¶ 9     The court briefly recessed to review case law and then noted that it did not see any prejudice to defendant from his failure to have an arraignment. However, it agreed that the State needed to demonstrate that defendant was properly admonished, and it recessed for one day, while transcripts of the admonishments were prepared.

¶ 10    When court resumed on September 30, 2022, defense counsel renewed his objection to trying defendant *in absentia*, given that he had not been arraigned. Further, counsel pointed out

that, upon review of the admonishment transcripts, it was evident that the court had failed to admonish defendant, as required by section 113-4(e) of the Code (*id.* § 113-4(e)), that a failure to appear for trial constituted a waiver of his right to confront and cross-examine witnesses. Specifically, that section provides that, when called upon to plea at arraignment, if a defendant pleads not guilty, the court shall advise that, if he or she later fails to appear, that failure would (1) constitute a waiver of his or her right to confront witnesses and (2) trial could proceed in his or her absence. *Id.*

¶ 11    The State responded that only substantial compliance with the statute is required and, further, that, where a defendant is properly admonished, trial may proceed in his or her absence.

¶ 12    The court acknowledged that it had not warned defendant that a failure to appear constituted a waiver of his right to confront witnesses. Specifically, it stated, "I agree at this time it does not appear that the Court specifically noted the fact that the defendant would be forfeiting his right to confront witnesses, but I do think there has been substantial compliance with that." The court granted the State's motion to proceed to trial *in absentia*.

¶ 13    On October 3, 2022, trial commenced, with Judge David Kliment presiding. Defendant was not present, and the court confirmed with the State that it had checked for defendant at nearby hospitals and custodial institutions to no avail. Defense counsel reiterated that, without waiving his objection to proceeding in defendant's absence, he was ready. In sum, the evidence at trial included four witnesses who testified collectively that, on February 2, 2021, at the Third Street Station bar in Geneva, defendant struck and injured another patron, Kristen Tunney. In addition, a surveillance video was admitted into evidence that depicted defendant raising his arm and striking Tunney in the head, with Tunney then falling to the ground.

¶ 14 Near the end of trial, prior to the jury instruction conference, the court noted that it realized no warrant had yet issued, and so it issued a no-bond warrant for defendant's arrest. Ultimately, the jury found defendant guilty of both counts of aggravated battery.

¶ 15 Defense counsel moved for a new trial or judgment notwithstanding the verdict, objecting, in part, to the court's decision to proceed to trial *in absentia*, when defendant had not been arraigned, had not entered a not-guilty plea, and had not been admonished by the court that his absence would result in a waiver of his right to confront and cross-examine witnesses against him. On January 25, 2023, the court held a hearing and denied the motion. The court immediately sentenced defendant *in absentia*, noting it considered all of the trial evidence and stating,

> "The most impactful piece of evidence in that case was the video. The video made very clear what happened and how he did it. It was an unprovoked, sneak attack on a woman who was standing having a conversation with somebody. And he hit her so hard it threw her to the ground and into a wall."

In addition, the court found that the character and attitude of defendant was evidenced by his absence at trial and sentencing. The court sentenced defendant to 42 months' imprisonment and 12 months' mandatory supervised release. On February 9, 2023, defense counsel filed a timely notice of appeal.[1]

---

[1]According to the Department of Corrections website, defendant was admitted into custody on May 17, 2023. See *Internet Inmate Status*, Ill. Dep't of Corr., https://www.idoc.state.il.us/subsections/search/inms_print.asp?idoc=M42728 (last visited Mar. 11, 2024) [https://perma.cc/29H2-L9JF]; see also *People v. White*, 357 Ill. App. 3d 1070, 1072 (2005) (taking judicial notice of certain Department of Corrections records, as they are public documents).

¶ 16                                    II. ANALYSIS

¶ 17                                 A. Admonishments

¶ 18    Defendant argues that he should not have been tried *in absentia* where, at the time the court issued him admonishments, (1) he had not been arraigned nor had he pleaded not guilty and/or (2) the court's admonishments did not advise him that a failure to appear at trial would constitute a waiver of his right to confront witnesses. Specifically, he notes that a court must substantially comply with section 113-4(e) of the Code, which requires that, at the time of arraignment and when a defendant pleads not guilty, or sometime thereafter, the court advise the defendant that, if he does not appear at trial, he or she would waive his or her right to confront witnesses and the trial could proceed without him or her. However, here, defendant argues, he was not arraigned and did not plead not guilty, so the court did not, at that time, provide section 113-4(e) admonishments. Thus, he contends, the court did not substantially comply with section 113-4(e). Alternatively, defendant argues, the court did not substantially comply with the statute because, although the court informed him that, if he did not appear, trial could proceed in his absence, the court never informed him that a failure to appear would constitute a waiver of his right to confrontation. Defendant requests that we reverse his conviction and remand for a new trial. For the following reasons, we agree.

¶ 19    Trials *in absentia* are generally abhorred because of their inherent unfairness to a defendant. *People v. Montes*, 2013 IL App (2d) 111132, ¶ 52. Indeed, "[t]he right to be present at trial is of constitutional dimension and can only be waived by a defendant himself." *People v. Lester*, 165 Ill. App. 3d 1056, 1058 (1988). A defendant's voluntary absence from trial may be construed as an effective waiver of his or her constitutional right to be present. *People v. Liss*, 2012 IL App (2d) 101191, ¶ 11. However, a waiver of the right to be present at trial is valid only if the

record indicates that the defendant was aware of the right he or she was waiving. *Lester*, 165 Ill. App. 3d at 1058. As such, in Illinois, a defendant has a statutory right to be orally admonished regarding the possible consequences of failing to appear in court when required. *People v. Phillips*, 242 Ill. 2d 189, 195 (2011). Specifically, section 113-4(e) of the Code provides that, if a defendant pleads not guilty at his or her arraignment, the court

> "shall advise him at that time or at any later court date on which he is present that if he escapes from custody or is released on bond and fails to appear in court when required by the court that his failure to appear would constitute a waiver of his right to confront the witnesses against him *and* trial could proceed in his absence." (Emphasis added.) 725 ILCS 5/113-4(e) (West 2020).

¶ 20    We note that the supreme court has expressed that legislative history reflects that "the 113-4(e) admonishment was part of a complex series of tradeoffs designed to balance the defendant's right to be present at trial, the State's interest in the expeditious administration of justice, and our traditional distrust of trials *in absentia*." *People v. Partee*, 125 Ill. 2d 24, 40 (1998). Further, the court has also noted that section 113-4(e) is designed to ensure that trial does not proceed in a defendant's absence unless that defendant has made a valid waiver of "his right to be present at trial *and* to confront witnesses against him." (Emphasis added.) *People v. Garner*, 147 Ill. 2d 467, 483 (1992). Indeed, our state constitution addresses a defendant's rights after indictment and lists as distinct and separate rights the right to be present at trial and the right to confront witnesses. See Ill. Const. 1970, art. I, § 8.

¶ 21    Nevertheless, the primary purpose of section 113-4(e) is to prevent "bail jumping" and to promote speedy judgment. (Internal quotation marks omitted.) *Phillips*, 242 Ill. 2d at 196. Thus, "[t]o allow a defendant to stop trial proceedings by his voluntary absence would allow him to profit

from his own wrong." *People v. Johnston*, 160 Ill. App. 3d 536, 540, (1987). Accordingly, "[a] defendant who is *properly* admonished that trial might proceed in his absence, has notice of his trial date, and voluntarily fails to appear offering no explanation for his absence may be tried *in absentia*." (Emphasis added.) *Id.*; see *People v. Lane*, 2011 IL App (3d) 080858, ¶ 22.

¶ 22    We note that, while a trial court *must* orally admonish a defendant pursuant to section 113-4(e), only "substantial compliance" with that section is necessary to permit trials *in absentia*. *Montes*, 2013 IL App (2d) 111132, ¶ 55; see *Phillips*, 242 Ill. 2d at 199 (there cannot be "substantial compliance" with the Code where the trial judge did not, in any way, admonish the defendant pursuant to section 113-4(e)). However, while the question of whether a court erred in allowing a trial to proceed *in absentia* is reviewed for an abuse of discretion (*People v. Smith*, 188 Ill. 2d 335, 341 (1999)), the question of whether a trial *in absentia* violated a defendant's constitutional rights, is a legal one, reviewed *de novo* (as both defendant and the State acknowledge in their briefs on appeal) (*Montes*, 2013 IL App (2d) 111132, ¶ 52; *Liss*, 2012 IL App (2d) 101191, ¶ 10). Indeed, the question here is whether, before proceeding to trial *in absentia*, the trial court had properly admonished defendant pursuant to the statute. That question, and any statutory interpretation necessary to answer it, concern legal issues we review *de novo*. See, *e.g.*, *Phillips*, 242 Ill. 2d at 194 (whether, under the facts of the case, a defendant waived the right to receive section 113-4(e) admonishments is one of law, reviewed *de novo*); *People v. Ramirez*, 214 Ill. 2d 176, 179 (2005) (construction of a statute is a question of law, reviewed *de novo*); *People v. Washington*, 2016 IL App (1st) 131198, ¶ 50 (noting, regarding Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), that whether a trial court properly admonished a defendant presents a question of law, reviewed *de novo*); *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114 (whether a court failed to substantially comply with required Rule 401(a) admonishments is a legal issue,

reviewed *de novo*); *People v. Spivey*, 377 Ill. App. 3d 146, 148 (2007) ("[a] trial court's compliance with statutory procedure is a question of law, and the standard of review is *de novo*").

¶ 23    Here, although defendant raises his arguments as alternatives—*i.e.*, trial *in absentia* was improper because he was not arraigned or, alternatively, because he was not informed that a failure to appear would constitute a waiver of his right to confront witnesses—we view the issues as related. Specifically, because defendant was not arraigned, he did not formally enter a not-guilty plea, which would have triggered the admonishments under section 113-4(e). Consequently, he did not, as contemplated by the statute, receive at arraignment the required admonishment concerning confrontation of witnesses. See, *e.g.*, *Lane*, 2011 IL App (3d) 080858, ¶ 27 (court did not comply with section 113-4(e) and erred in conducting a trial *in absentia*, where (1) the court *gave* the defendant section 113-4(e) admonishments but the record was unclear whether the defendant, on that date, entered any plea, *and* (2) when the defendant later entered a plea at his arraignment, the report of proceedings did not reflect that the court provided the section 113-4(e) admonishments). In addition, although the statute provides that admonishments may be given at a time after arraignment, that did not happen either. See *People v. Burge*, 2021 IL 125642, ¶ 26 (the phrase "any later court date" in section 113-4(e) ensures that "defendants who cannot receive subsection (e)'s admonishment at their arraignment nonetheless receive the necessary admonishment prior to trial"). On two occasions, the court informed defendant that trial could proceed in his absence, but *not* that his absence would also constitute a waiver of his right to confront witnesses. Accordingly, in short, the record does not reflect that defendant was *ever* informed that a failure to appear would constitute a waiver of his right to confront witnesses.

¶ 24    The State here argues that substantial compliance with the statute nevertheless occurred. It first asserts that an arraignment may be waived by entering a plea and proceeding to trial and where

the defendant did not "ever object to the lack of a formal arraignment." While these principles might generally be correct, they are inapplicable here: defendant did not enter a plea, and his counsel, on defendant's behalf, adamantly and repeatedly objected to proceeding to trial where defendant had not been arraigned.

¶ 25    Next, the State notes that, while the supreme court has indicated that the *in absentia* admonishments are most effective at the time of arraignment and the legislature intended that they be given at arraignment (see *Garner*, 147 Ill. 2d at 481, 483), formal arraignment is not *required* prior to providing those admonishments. Again, even if true (indeed, the statute allows admonishments to be given at a court hearing after arraignment but still in the context of a not-guilty plea), the statute nevertheless requires that, at some point prior to trial *in absentia*, the defendant be properly admonished. Here, defendant did not, at "any later court date," receive both portions of the admonishment required by section 113-4(e).

¶ 26    The State also points out that, absent an adverse effect on a defendant's rights, an arraignment and plea are mere formalities, inessential to a valid conviction and, according to section 113-6 of the Code (725 ILCS 5/113-6 (West 2020)), neither the failure to arraign nor an irregularity in the arraignment affects the validity of any proceeding "if the defendant pleads to the charge or proceeds to trial without objecting to such failure or irregularity." Yet again, even if true, defendant here did not plead to the charge nor proceed to trial without objecting to the failure to arraign, and the adverse effect on defendant's rights, he contends, is that he was never properly admonished before trial was conducted in his absence.

¶ 27    The State further suggests that the adverse effects from the absence of a formal arraignment or plea of not guilty are minimized by the fact that defendant's case was pending for more than one year before trial commenced. We fail to see the relevance. Rather, this demonstrates there was

plenty of time to arraign him, and, in any case, he did not receive both portions of the admonishment and objected, on those grounds, before trial was held in his absence.

¶ 28    Finally, the State asserts that the record demonstrates that defendant did not plead *guilty* and, therefore, the case proceeded *as if* defendant had pleaded not guilty, which section 113-4(b) of the Code (*id.* § 113-4(b)) recognizes as permissible when a defendant stands mute at his or her arraignment, such that a plea of not guilty may be entered for him or her. This, too, did not happen. There was no arraignment, and the court did not enter a not-guilty plea on defendant's behalf.

¶ 29    We need not reach whether, if a defendant is never arraigned (and does not waive arraignment), a court can ever substantially comply with the statute. Rather, we consider simply whether the court here substantially complied with the statute, where it twice informed defendant *only* that trial could proceed in his absence and where, in response, defendant indicated that he understood. In *Liss*, 2012 IL App (2d) 101191, ¶¶ 17-18, a panel from this court considered whether a defendant was properly tried *in absentia*, given that the trial court had not, after he entered his plea, admonished him that he would be waiving his right to confront the witnesses against him. We found that the trial court complied with section 113-4(e) because, at the arraignment—but *prior* to the defendant entering his not-guilty plea—the court admonished him that, if the case went to trial, he would have the right to confront and cross-examine witnesses. *Id.* ¶ 18. Then, at the same hearing, after the defendant pleaded not guilty, the trial court admonished him that, if he failed to appear, trial could proceed in his absence. *Id.* We held that the two admonishments being separated by the defendant's not-guilty plea did not change that he was sufficiently put on notice that, if he failed to appear for trial, he would lose the ability to confront the witnesses against him. *Id.* After so holding, we noted that, even if the defendant had *not* been admonished about his confrontation rights, the result would not change, given the court's decision

in *People v. Broyld*, 146 Ill. App. 3d 693, 697 (1986); see *Liss*, 2012 IL App (2d) 101191, ¶ 19; see also *Montes*, 2013 IL App (2d) 111132, ¶ 56 (citing *Broyld* in a string citation as an example of a case where an imperfect admonishment had not required reversal). However, the comments in *Liss* concerning *Broyld* were not necessary to the holding; the facts of the case evidenced that the defendant *was* informed at arraignment about his right to confrontation and, thus, there was substantial compliance with the statute. In contrast, here, we are squarely forced to decide whether to follow *Broyld* and, under the facts, decline to do so.

¶ 30    In *Broyld*, the defendant was admonished at arraignment that, if she failed to appear at trial, the trial could proceed in her absence, but she was not admonished that, by failing to appear, she would waive the right to confront witnesses. *Broyld*, 146 Ill. App. 3d at 697. The court, nonetheless, found that the admonishments had substantially complied with the statute. However, in doing so, the court relied on its conclusion that "[s]uch precedent as exists holds that no new trial is required merely because the admonition does not refer to loss of confrontation rights." *Id.* at 698. But a review of the precedent to which the court referred does not, in our view, directly answer that question.

¶ 31    For example, the *Broyld* court relied on *People v. Watson*, 109 Ill. App. 3d 880 (1982), where the defendant was given no oral admonishments at arraignment or otherwise concerning the consequences of not appearing at trial, although a notice was mailed to the defendant, which mentioned the possibility that he could be tried in his absence but not the right to confrontation. *Id.* at 881-82. According to *Broyld*, the *Watson* court "deemed the error to arise from the failure of the court to admonish defendant personally and in court. The court said nothing about the failure to mention loss of confrontation rights in the written notice." *Broyld*, 146 Ill. App. 3d at 698. In our view, there was no need to mention the absence of confrontation rights in the written notice,

as the court was not specifically faced with that issue, and, moreover, it decided that the written notice in its *entirety* was inadequate to satisfy the statute's requirements for admonishments in open court. *Watson*, 109 Ill. App. 3d at 881-84. As such, not mentioning the absence of confrontation rights in the written notice was *not* equivalent to an affirmative holding that substantial compliance is satisfied, even if, as here, the confrontation admonishment is completely absent from the record. In fact, the court in *Watson* specifically noted that "the legislative scheme providing for trial *in absentia* is designed to insure that such a trial is not held unless defendant has made a valid waiver of his right to be present at trial *and* to confront witnesses against him." (Emphasis added.) *Id.* at 882.

¶ 32      The *Broyld* court next relied on *People v. Clark*, 96 Ill. App. 3d 491 (1981),[2] where the defendant was not informed about the failure to appear resulting in a loss of the right to confrontation. The court noted that the statutory admonishments referenced both trial in a defendant's absence *and* the loss of confrontation rights, but it stated simply, "[i]n the instant case, the defendant's admonishment referred only to a trial *in absentia.* We do not find this admonishment fatal, however, as it satisfies statutory requirements." *Id.* at 496. In other words, the *Clark* court apparently recognized the admonishment's deficiency but then provided no explanation or rationale for holding, nevertheless, that it satisfied the statute. Accordingly, we respectfully do not agree with *Broyld* that *Clark* is persuasive authority or that, collectively, *Watson* and *Clark* represent affirmative authority that, where a defendant is not admonished that a

---

[2]Interestingly, the *Watson* court specifically declined to follow the *Clark* decision, although on slightly different grounds. *Watson*, 109 Ill. App. 3d at 883.

failure to appear constitutes a waiver of his or her right to confront witnesses, a new trial is not required.

¶ 33     We also note that *Broyld* reasoned that any defendant who could "understand what the court meant when it stated that the right of confrontation would be lost, would understand that if he or she were not present at trial, that right could not be exercised." *Broyld*, 146 Ill. App. 3d at 698. The statement implies that, if a defendant probably understands what he or she might be waiving, then no harm, no foul. Again, we respectfully disagree. Setting aside the lack of knowledge of the law that some defendants might possess, our supreme court has held that, even when a defendant is a "veteran offender" who might have been admonished in other courtrooms or who has "knowledge of the law in some very complicated matters," the *in absentia* admonishments remain required. Indeed:

> "[T]he statute directs the trial court to admonish the defendant. No exemption from the admonishment requirement exists, regardless of how seasoned or knowledgeable the criminal defendant. Moreover, we decline to equate knowledge of the law with waiver of a right. Nor are we inclined to find that admonishment at a different time or proceeding on a different offense should serve as blanket coverage precluding the necessity for any subsequent admonishment. The dangers in so finding are obvious." *Garner*, 147 Ill. 2d at 479.[3]

---

[3]For the same reason, we reject the State's argument here implying that, because defendant may have pleaded not guilty in misdemeanor cases—possibly receiving admonishments there— then proper admonishments would not be necessary here.

¶ 34 Moreover, if *Broyld* is correct that the capacity to understand a waiver of the right to confrontation necessarily means a defendant understands that, by not appearing, he or she is waiving that right, it raises the question why both admonishments appear as required components of section 113-4(e). Indeed, if the admonishment regarding confrontation of witnesses may be implicitly "covered" or subsumed by the broader admonishment that trial may proceed in the defendant's absence, we question why the legislature specifically chose to separate and include *both* in section 113-4(e). Again, as previously noted, the supreme court has expressed that the legislative history reflects that "the 113-4(e) admonishment was part of a complex series of tradeoffs designed to balance the defendant's right to be present at trial, the State's interest in the expeditious administration of justice, and our traditional distrust of trials *in absentia*." *Partee*, 125 Ill. 2d at 40. Further, the court has also noted that section 113-4(e) is designed to ensure that trial does not proceed in a defendant's absence unless that defendant has made a valid waiver of "his right to be present at trial *and* to confront witnesses against him." (Emphasis added.) *Garner*, 147 Ill. 2d at 483; see Ill. Const. 1970, art. I, § 8 (addressing rights after indictment and listing as distinct and separate rights the right to be present at trial and the right to confront witnesses). As such, we presume that the legislature intentionally included both portions of the admonishment, and, if we interpret the statute such that a court may substantially comply by informing a defendant only that trial can proceed in his or her absence, the admonishment concerning confrontation of witnesses would be rendered superfluous and irrelevant. "[W]e must not read a statute so as to render any part superfluous or meaningless." *People ex rel. Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 23. Accordingly, while we indeed agree with the dissent that the "full admonishment" is the "better practice" (*infra* ¶ 124), our agreement is premised on the fact that the full admonishment is *expressly required* by the statute. Respectfully, we believe that the

dissent's position would negate a statutory mandate. And, if the failure to follow the "better practice" has no consequence, then the result is the same as holding that the confrontation piece of the admonishment is not required *ever*, which, in our view, renders the statutory language superfluous.

¶ 35    We emphasize that our decision should not be characterized as requiring strict compliance or that the court read the statute verbatim. However, our assessment of whether compliance was substantial is informed by considering the "essence of the rule," as expressed by legislative intent, the surest indicator of which is the statutory language itself. *People v. Dominguez*, 2012 IL 111336, ¶¶ 16, 19; see *People v. Coppage*, 187 Ill. App. 3d 436, 442 (1989) (rejecting the defendant's argument that strict compliance with section 113-4(e) is required, but noting that, while the specific words used to admonish are not important, they must still be scrutinized to ensure a knowing waiver has been made). Here, while only substantial compliance with section 113-4(e) is required, this is not a case where, for example, the defendant received both admonishments but at different times (*e.g.*, *Liss*, 2012 IL App (2d) 101191, ¶ 18), or the court used the word "hearing" instead of "trial" when providing the admonishments (*e.g.*, *Montes*, 2013 IL App (2d) 111132, ¶ 57). Rather, in this case, prior to being tried *in absentia*, defendant never received one of the two components of the statutorily required admonishment.

¶ 36    The dissent posits that the trial court's decision here was not an abuse of discretion and is supported by decades of precedent. We respectfully disagree. Again, our review of the admonishments is *de novo*. To the extent the appellate court has touched on this issue, we have explained why we find that authority distinguishable or decline to follow it. With respect to authority from our supreme court, we respectfully depart from our colleague's interpretation of those cases. Specifically, in the broadest sense, *Garner*, *Phillips*, and *Dominguez* addressed, in

part, whether written admonishments could supplement or substitute for mandated oral admonishments. In those cases, the court cited the appellate court decisions noted by the dissent for a specific proposition (*Garner*), to distinguish the State's cited authority (*Phillips*), or to compare authority interpreting section 113-4(e) with a supreme court rule (*Dominguez*). In context, it was not necessary for the supreme court to address the substance of the admonishments in the cited appellate cases, nor did it. We, therefore, do not interpret the court's purposeful and limited references to these cases as reflecting affirmative approval of the complete absence of a confrontation admonishment.

¶ 37    Specifically, in its conclusion, the court in *Garner* emphasized that it is "clear" that "the legislative scheme is designed to ensure that trial in the defendant's absence is not held unless defendant has made a valid waiver of his right to be present at trial *and* to confront witnesses against him." (Emphasis added.) *Garner*, 147 Ill. 2d at 483. The court could have omitted the clause about confronting witnesses but did not. Further, its statement cited *People v. Velasco*, 184 Ill. App. 3d 618, 626 (1989), which *twice* reflects at that pinpoint citation the same specific proposition, noting that the statutory scheme is designed "to ensure that a trial *in absentia* is not held unless a defendant has made a valid waiver of his right to be present at trial *and* confront witnesses against him." (Emphasis added.) *Garner*, 147 Ill. 2d at 483. We do not interpret the *Garner* court's precise citation of *Velasco* for a specific proposition as *also* reflecting an affirmative endorsement of every other fact or holding in that case, including the admonishments given in *Velasco*.

¶ 38    The court in *Phillips*— again, considering the import of *written* admonishments— explained that *People v. Condon*, 272 Ill. App. 3d 437 (1995), did not assist the State's position that written admonishments alone satisfy section 113-4(e), because, to the extent that *Condon* held

that written admonishments alone were adequate, it was overruled. *Phillips*, 242 Ill. 2d at 200-01. In context, the *Phillips* court's later reference to *Condon*'s oral admonishment was not for the purpose of condoning an admonishment that did not mention the right to confront witnesses. Rather, the court simply rejected the State's rationale for relying on that case and noted that, even in *Condon*, the defendant was ultimately provided with both oral and written admonishments. *Id.* It did not hold that the contents of the oral admonishments given by the trial court in *Condon* substantially complied with section 113-4(e), as that issue was not before it.

¶ 39    *Dominguez* considered the issue of substantial compliance under Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001) and whether written admonishments had any value in supplementing imperfect oral admonishments. *Dominguez*, 2012 IL 111336, ¶ 27. There, the court also noted that the trial court in *Condon* offered oral admonishments to supplement written admonishments, but again, the court did *not* discuss the substance or sufficiency of those oral admonishments, the contents of which were not before it. *Id.* ¶ 34. We also note that the court in *Dominguez* found that substantial compliance with Rule 605(c) was satisfied and that the three challenged admonishments conveyed the essence of the rule, where, although imperfect, they addressed *each* required element, either orally or in writing. *Id.* ¶¶ 40-54. And unlike here, in *Dominguez*, none of the specific admonishments that the defendant challenged were *completely* absent from the record.

¶ 40    Our decision is consistent with *Smith*, 188 Ill. 2d 335. Indeed, in *Smith*, at the defendant's arraignment, the trial court specifically admonished her both that trial could proceed in her absence *and* that, "should her trial proceed *in absentia*, she would not be able to confront witnesses or assist her attorney." *Id.* at 338. The supreme court's analysis, therefore, did not concern whether the trial court's admonishments substantially complied with section 113-4: clearly, they did. Instead, the

issue was whether the trial court abused its discretion by starting the trial *in absentia* without first considering whether the defendant's absence was "willful." *Id.* at 342-43. The court did not, as the dissent opines (*infra* ¶¶ 88, 106), establish that the full admonishment in section 113-4(e) is not required. Rather, in our view, *Smith*'s interpretation of section 115-4.1 (725 ILCS 5/115-4.1 (West 1996)) is in complete harmony with *Garner*'s interpretation of section 113-4(e) as requiring that a trial in the defendant's absence not be held unless the defendant has made a valid waiver of both the right to be present at trial *and* the right to confront witnesses. Indeed, in applying the willfulness test to the facts of that case, the *Smith* court explained that the defendant had already been advised in full compliance with section 113-4(e), including the right to confrontation. *Smith*, 188 Ill. 2d at 347-48. We read *Smith* as holding that, where a defendant knows the date and time of trial, knows that it will proceed without him or her, and then fails to appear, it is not unreasonable to find the absence willful and, effectively, a knowing waiver of both rights *of which he or she had previously been informed*. If *Smith* meant to hold that a defendant makes a knowing waiver of the right to confrontation, even when never informed of that right, it would have explicitly said so.

¶ 41    Here, in contrast, the question is not whether defendant's absence was willful but whether, even assuming willfulness, he knew what he was waiving. And although the dissent contends that defendant knew that he was required to appear and that trial could proceed in his absence, it either assumes this translates to knowledge about the right to confrontation or contends that lacking such knowledge is not prejudicial. *Infra* ¶ 90. Setting aside the inherent prejudice of being convicted in one's absence, the dissent's position is contrary to *Garner*'s rejection of the notion that, *even if a defendant knows the law*, there is no exception to the *court's* obligation to provide the admonishments (*Garner*, 147 Ill. 2d at 479), as well as to the plain language of section 113-4(e), which suggests that the legislature did not agree that knowledge that trial may proceed in one's

absence also encompasses knowledge about the right to confront witnesses. It is not our function to rewrite the statute or determine what might be a better rule. *Id.* at 475-76.

¶ 42 Finally, although we agree that comparing interpretations of similar statutes or rules is useful, we disagree with the implication that the rights a defendant waives by pleading guilty are more impactful than those waived by simply not appearing at trial and, therefore, admonishments that would suffice as substantial compliance under Illinois Supreme Court Rule 402 (eff. July 1, 2012) for guilty pleas necessarily and always suffice for *absentia* purposes. As defense counsel noted at oral argument, the situations are different in a meaningful way. In our view, a defendant choosing to accept a conviction in exchange for a benefit is not more prejudiced by an imperfect admonishment than a defendant who is tried by the State and convicted in his or her absence. The law abhors trials *in absentia*, not guilty pleas.

¶ 43 In sum, as trials *in absentia* are abhorred (*Montes*, 2013 IL App (2d) 111132, ¶ 52) and a waiver of rights is effective only when the defendant is aware of the right being waived (*Lester*, 165 Ill. App. 3d at 1058), we reverse defendant's conviction and remand for a new trial.

¶ 44                                 B. Double Jeopardy

¶ 45 Although defendant raises no question concerning the sufficiency of the evidence, a retrial raises concerns of double jeopardy. See, *e.g.*, *Garner*, 147 Ill. 2d at 483. As such, we note that the evidence presented at trial was sufficient to support a finding of guilt and there is no risk of double jeopardy on retrial. However, we emphasize that our holding makes no inference or determination concerning defendant's guilt. *Id.*

¶ 46                                 III. CONCLUSION

¶ 47 For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded.

¶ 48    Reversed; cause remanded.

¶ 49    JUSTICE BIRKETT, dissenting:

¶ 50    I would hold that the trial court's admonishments regarding the possibility of trial *in absentia* substantially complied with section 113-4(e) and the trial court did not abuse its discretion in granting the State's request to try defendant *in absentia*, where that decision is supported by decades of precedent.

¶ 51                        I. ADDITIONAL BACKGROUND

¶ 52    On February 2, 2021, defendant was arrested in Geneva after he approached a woman from behind and struck her in the back of her head. She was knocked off her barstool and hit a wall, which caused her to suffer a concussion. Defendant was charged with misdemeanor battery offenses. Defendant retained private counsel, Mr. Robert Deters.

¶ 53    On April 28, 2021, while appearing in branch court on the misdemeanor battery charges, defendant was served with a notice to appear in courtroom 311 on enhanced felony charges stemming from the February 2 incident. Mr. Deters appeared in person and defendant appeared via Zoom. Mr. Deters stated that the parties had exchanged discovery on the misdemeanor case and that "the State can tender me anything that was not tendered earlier." Judge Tegeler warned the attorneys to "make sure nothing happens on that misdemeanor." Judge Tegeler then asked Mr. Deters how much time he needed "to get ready to *set this* or *plea it*?" (Emphasis added.) Mr. Deters requested 45 days. After setting the next date, Judge Tegeler asked Mr. Deters if there was "anything else," and Mr. Deters replied, "[N]ot here." Defendant was ordered to be processed on the felony charges "on the next date," and the misdemeanor charges (case No. 21-CM-261) were ordered to "be consolidated with 21-CF-608." The order stated that, "[u]pon consolidation, the

State's motion to *nolle pross* 21-CM-261 is hereby granted." Despite this order, the record from case No. 21-CM-261 is not part of the record on appeal.

¶ 54    On June 15, 2021, Judge Tegeler noted that Mr. Deters's appearance was not on file. Mr. Deters said that he had filed his appearance in the misdemeanor case but that he would file an appearance on the felony case. The State was permitted, without objection, to amend the indictment, naming Kristen Tunney instead of Heather Zietler as the victim. Judge Tegeler ordered that a copy of the grand jury transcript be filed "as part of the record, just in case there is ever a question." Judge Tegeler noted that this case was "relatively new" and suggested "you guys talk, see if you can resolve it. If not, we'll get a trial date four or five months down the road after that." Mr. Deters replied, "[T]hank you, your Honor. That was going to be my suggestion." The case was set for plea or trial setting on September 1, 2021. Defendant indicated that he had heard everything that was said.

¶ 55    On September 1, 2021, Mr. Deters informed Judge Tegeler that defendant received a drug and alcohol evaluation as "part of our mitigation" but the results had not yet come in. Mr. Deters also stated that defendant was undergoing "extensive surgeries for his back," as well as "rehab for six to twelve weeks." Mr. Deters reported that he would rather not have defendant "recovering from surgery while we're contemplating a plea." The case was scheduled for a final plea or setting on October 20, 2021.

¶ 56    On October 20, 2021, defendant appeared via Zoom. Judge Tegeler asked whether a plea had been worked out, and Mr. Deters replied that he had just received materials from the State relevant to defendant's background. Mr. Deters requested a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Judge Tegeler suggested a date in December for a Rule 402 conference and February 24, 2022, for trial. He then advised defendant as follows:

"THE COURT: Mr. Hietschold, February 24th at 1:30 in the afternoon in courtroom 311. You must be present that day. If you are not, a warrant could issue for your arrest and you could be tried in your absence, and if found guilty, sentenced in your absence. Do you understand? You're muted. Give me a thumbs up if you understand. He understood. There is a thumbs up."

Judge Tegeler then proceeded to admonish defendant regarding Rule 402. Defendant agreed to a Rule 402 conference, which was scheduled for December 15, 2021. The record shows that on December 15, 2021, the case was continued to January 7, 2022, for a Rule 402 conference. The record shows that on January 12, 2022, a Rule 402 conference was held and the case was continued "for trial on February 24th with a possible plea at 1:30 [in] room 311."

¶ 57    On February 3, 2022, Mr. Deters filed a notice of motion to withdraw. On February 10, 2022, Mr. Deters informed Judge Tegeler that he was seeking to withdraw. Judge Tegeler asked defendant if he had any objection, and the following exchange occurred:

"DEFENDANT: I had asked my attorney to withdraw. There are complications. I intend to hire Jeff Tomczak and I am in no way, shape, or form trying to delay any matters what's going on. I know people do that kind of stuff. I am not doing that.

There are major things going on that were handled wrong—

THE COURT: Sir—

DEFENDANT:—and—

THE COURT:—Sir—

(Simultaneous cross talk)

DEFENDANT: And I need to have an attorney to give me, you know, a fair trial.

THE COURT: Sir, the question is, do you object to your attorney withdrawing, yes or no?

DEFENDANT: No, I do not object to him withdrawing."

Judge Tegeler was about to schedule the case for March 3, 2022, when the State reminded the court that the case was set for trial for February 24, 2022. Judge Tegeler then asked Mr. Deters, "[w]hy do you want to get out now? What's going on?" Mr. Deters explained that defendant was "unhappy with [his] representation" and that their "communication ha[d] broken down to the point that [he] cannot work with [defendant]." Mr. Deters requested time for defendant to find new counsel and stated that he would provide new counsel with all the discovery material. The trial date was stricken, but the February 24 date was set for new counsel to appear. Defendant was ordered to personally appear.

¶ 58 On February 24, 2022, Mr. Gary Johnson appeared on behalf of defendant. The State tendered all discovery. Defendant's presence was noted, and the case was continued to March 30, 2022, for plea or setting.

¶ 59 On March 30, 2022, Mr. Johnson appeared, with Judge Flood presiding, and requested more time because he was new to the case and was "continuing to talk" with the State and "bantering back and forth with some ideas." With the agreement of the State, Judge Flood continued the case to May 11, 2022, for "final plea or setting."

¶ 60 On May 11, 2022, Mr. Johnson requested another continuance. He advised Judge Flood that he had defendant "in a couple of programs so that [he] can either put together a good mitigation letter or proceed otherwise." Mr. Johnson requested time to "let those programs percolate a little bit" so that he could approach the State with "a few more, I guess, arrows-by-quiver mitigation." The State requested that the next date, July 8, 2022, be a "trial-setting date."

¶ 61 On July 8, 2022, defendant did not appear. Mr. Johnson reported that defendant had COVID-19. Judge Flood asked the State if it objected to waiving defendant's presence, and the State replied that it was asking for a trial date and that it "would need him." Mr. Johnson replied that he did not "want to set a trial date" because he was "trying to put together a final sort of mitigation letter." The case was continued to July 22, 2022, for "final plea or setting." Judge Flood ordered that defendant's presence was waived only for July 8 and ordered defendant "to be present on the next date."

¶ 62 On July 22, 2022, defendant appeared via Zoom and reported that he still had COVID-19. Because of defendant's illness, Mr. Johnson informed the court that it had been difficult to "get a mitigation letter together," and he asked for a "super final plea or setting." The State objected, noting that there had been a prior trial date and there had been a Rule 402 conference. The State suggested a trial date with an interim status date for Mr. Johnson to "get mitigation to us." Judge Flood continued the case to September 29, 2022, with the jury being summoned on October 3, 2022. Judge Flood then admonished defendant as follows:

> "THE COURT: [T]his case will be continued for jury trial to September 29th at 1:30, with the jury being summoned October 3rd at 9:00.
>
> Mr. Hietschold, you do have a right to be present at all of your court dates.
>
> You do need to be present on both of those dates.
>
> If you fail to come to court, that would constitute a waiver of your right to be present, and the trial could continue without you.
>
> You could be found guilty, [and] you could be sentenced if you don't come back to court. Do you understand all that?

So[,] it looks like you're saying yes, ma'am. You would need to unmute for me to hear you."

Judge Flood set an interim jury trial status date of August 26, 2022.

¶ 63    On August 26, 2022, defendant failed to appear and Mr. Johnson asked if his presence was waived. The State commented that it did not believe that defendant's presence had been waived. Judge Flood commented that the case was continued for status of the trial, "to determine if there was any movement as far as negotiation on this." Judge Flood continued that she did "not see the defendant's presence was waived," and she asked the parties if they wished to pass the case. Mr. Johnson replied, "I don't know about the efficacy of that." Judge Flood waived defendant's presence for August 26, 2022, only. She then asked Mr. Johnson if he wanted "any intervening dates." Mr. Johnson replied "no" and indicated that he would talk to defendant and the State. Judge Flood reiterated that defendant was required to be present at "1:30 on September 29th for jury trial."

¶ 64    On September 29, 2022, defendant failed to appear for trial. The State answered ready and requested to try defendant *in absentia*. The State then made the following proffer:

"MS. NORKUS: I would ask to direct the Court's attention to an order entered October 20th of 2021 in which Defendant, with his previous counsel, set this matter for a jury trial where *in absentia* rights were explained. The defendant—a week before his jury trial, his attorney did withdraw, and then he hired Mr. Johnson. And then again on July 22nd of 2022, the defendant was admonished with respect to a trial *in absentia*, and we set that matter for a jury trial for today's date.

I could also proffer to the Court that I spoke with Sergeant Jerdee *** from the Geneva Police Department, who called multiple hospitals, including *** in Morris, the city

Morris, where the defendant resides. And we also did check VINELink this morning, and he was not in custody elsewhere.

So[,] your Honor, we would argue that he is willfully not appearing, and we would request to go *in absentia*. Thank you.

¶ 65    In response, Mr. Johnson stated that he was quoting *Smith*, 188 Ill. 2d 335, and he described it as holding that "the State has to show, before they can show that he's willfully absented himself, they have to make a *prima facie* case. In order to do that, they have to show that he was advised of the trial date, he was advised that his failure to appear could result in a trial *in absentia*, and that he did not appear for—when the case was called." Mr. Johnson acknowledged that defendant failed to appear, but he said the State was relying on a court order and "I think they actually have to bring a transcript into court for this purpose." Mr. Johnson then said, "[m]ore importantly, your Honor, it appears from my examination of the file that the defendant was never arraigned. And that being the case—and the statute basically requires that he be arraigned before this matter can proceed to trial." Mr. Johnson then noted that section 113-6 provides that "neither a failure to arraign nor any irregularity in the arraignment shall affect the validity of any proceeding if the defendant pleads to the charge or proceeds to trial without objection to such failure or irregularity." Mr. Johnson then stated, "[w]ell, Judge, we are objecting." Mr. Johnson continued, "[i]n all honesty, I've had conversations with the State, judge, and I've talked to them about my asking for a continuance today." Mr. Johnson said he could not get ahold of defendant and explained that defendant hired him "to try to plead his case out, basically." He continued that, "[w]hen [he] wasn't able to do that or get a better offer than prior counsel had, all of a sudden, we set the case for trial and then I can't get ahold of him." Mr. Johnson said that he was "caught flatfooted" and that there were a few things he should have done, as set out in his motion to continue. Mr. Johnson discussed information

that defendant's girlfriend might have and video from a camera outside the bar "where some activities might have occurred before." Mr. Johnson said his motion to continue was not his "first line of defense." He said the "statute makes it clear that if we object, that—that arraignment has failed to his going to trial or pleading. We are objecting."

¶ 66    In response, the State cited section 115-4.1(a) of the Code, which provides that the "[a]bsence of a defendant as specified in this Section shall not be a bar to indictment of a defendant, return of information against a defendant, or arraignment of a defendant for the charge for which bail has been granted. If a defendant fails to appear at arraignment, the court may enter a plea of 'not guilty' on his behalf." 725 ILCS 5/115-4.1(a) (West 2020). The court asked Mr. Johnson and the State for the statutes they were relying on. Mr. Johnson said "113, basically, -1 and -6," and the State confirmed that it was referencing section 115-4.1(a).

¶ 67    Following a brief recess, Judge Flood stated that she would "like to take just a second to look under the annotated sections—annotated statute for each of these sections." She continued, stating that it "appears, based on [her] initial reading, that Section 115-4.1 may trump the arraignment statute. It seems to clearly state that if a defendant absents himself, that he has given up his right to object, but I am going to check that." Judge Flood agreed with Mr. Johnson that "we may need to set it over" to get a transcript "to make sure" defendant was admonished.

¶ 68    The State asked if it should respond to defendant's motion to continue "now or after" the court looks at the statute. Mr. Johnson confirmed that if the court disagreed with his position on trying defendant *in absentia*, he would move to continue the case. The State responded that it was ready for trial with three civilian witnesses and an officer "confirmed ready for trial," as had been the case on "February 24th." As to the "outside video," the State did not believe there was any, as confirmed by the officers. Mr. Johnson confirmed that the incident occurred inside the bar and

"part of it, at least, is on video," but said that what occurred outside "might go to show self-defense."

¶ 69    Following a recess, Judge Tegeler stated that he had looked at both statutory sections and also "found a couple of cases." Judge Flood cited *People v. Thomas*, 38 Ill. App. 3d 689, 691 (1976), from the Third District, which held that "the absence of counsel at arraignment cannot be the basis for reversal" where the defendant suffered no prejudice. The court also cited *People v. Jones*, 56 Ill. App. 3d 600 (1977), from the Fifth District, which Judge Flood described as holding that "the admission of a formal plea constitutes reversible error only if the defendant was prejudiced thereby." Judge Tegeler also discussed a case involving a jury waiver where a new offense "was charged that [the defendant] was not arraigned on *** when he waived a jury trial." Judge Flood stated that he was "not seeing any prejudice here at this time by failing to have an arraignment." Judge Flood continued the case to the next day for the State "to show with a transcript that the defendant was actually admonished" and for ruling on defendant's motion to continue.

¶ 70    On September 30, 2022, the State provided a transcript from July 22, 2022, via e-mail to the court and Mr. Johnson. Mr. Johnson argued that the transcript "does not indicate what the statute requires, that he could be tried *in absentia* and that he could also forfeit the right to confront witnesses, cross-examine the witnesses against him, which is statutorily required." Judge Flood acknowledged that the transcript showed that he did not "specifically" say "those words," and he took a short recess.

¶ 71    Following the recess, the State responded by citing *Montes*, 2013 IL App (2d) 111132, from this court, for the proposition that, "if the defendant fails to appear in court when required, pursuant to the statute governing such admonishment, only substantial compliance with the statute

is necessary to permit the trial of an absent defendant." The State emphasized that it was clear that defendant was told that he had to be present on both September 29 and October 3. The State also, again, referred to the admonishments given to defendant on July 22, 2022, when defendant said that he understood. Mr. Johnson did not have any response.

¶ 72    Judge Flood ruled that, although the admonishment did not include "the fact that the defendant would be forfeiting his right to confront witnesses," there had been "substantial compliance," and he granted the State's request to proceed *in absentia*.

¶ 73    Judge Flood then noted that it had just "been handed an amended disclosure to the State." Mr. Johnson explained that he was adding "defenses of others[ ] because there's another person involved." The court noted that the motion to continue "includes locating a witness who is currently under subpoena." Mr. Johnson explained that he had not been able to contact the witness but that finally, "this morning," they talked and the witness "didn't want to come in, and [Mr. Johnson did not] have her under subpoena." Mr. Johnson also acknowledged that the State had indicated it was not going to use a statement from defendant that would be the basis of a motion to suppress referred to in defendant's motion to continue. Finally, with respect to the witness, he said, "without the videotape, I probably won't be calling her." Mr. Johnson explained that there may have been some earlier altercation between Kristen Tunney and Nicole Bartnik outside the bar before the incident involving defendant inside the bar. Judge Flood asked Mr. Johnson why this was only now being brought up for the first time, and Mr. Johnson explained:

> "Well, I put it—I set forth in the motion I was thinking this thing was not going to go to trial. I was thinking this thing was getting pled. And then, all of a sudden, my client is now gone and I'm expecting a plea and I don't—and it's not happening now. So that's why.

And I'm not saying I'm not at fault. That's—some of that is on me, maybe even all of it. But that's my excuse, and I'm sticking with it."

The State responded by informing the court that an officer went to the "place of the incident" the prior night and confirmed that there were outside cameras but that the "external surveillance" is only kept for about one week.

¶ 74 Judge Flood found that there was no well-founded basis to continue the case. Judge Flood then heard argument on defendant's motion *in limine*, which Judge Flood granted in part and denied in part. The court allowed, over defendant's objection, the State to introduce the interaction between Tunney and Bartnik that took place several minutes before defendant struck Tunney, because it was relevant to motive. The State agreed not to introduce evidence of an altercation between Bartnik and another person. Judge Flood reserved ruling on defendant's request to preclude the State from commenting on or eliciting testimony regarding defendant's absence.

¶ 75 On October 3, 2022, the case was called for trial, before Judge David Kliment. Judge Kliment noted that Judge Flood had "made a finding that the State is in substantial compliance," but he inquired whether she made "a finding that he's willfully absenting himself or just that the State has shown that he was advised of his right *in absentia*?" Judge Kliment asked if the State had "checked local jails, hospitals, anything like that?" The State confirmed that it had "proffered on Thursday that [it] had contacted seven different hospitals and [ ] looked at VINELink to see if he was in custody elsewhere and he was not." The State answered ready, and Mr. Johnson answered ready without waiving the objection to trial *in absentia*.

¶ 76 Judge Kliment heard argument on defendant's motion regarding comment or evidence of defendant's absence. Judge Kliment commented that he needed to look at the cases submitted by the parties and reserved ruling. Judge Kliment stated that there would be no comment during jury

selection regarding defendant's absence and the only comment would be the court noting "that he is not present."

¶ 77    Following jury selection, Judge Kliment granted defendant's motion to bar any "references to consciousness of guilt or flight because there's no evidence that he had fled."

¶ 78    On October 4, 2022, prior to closing argument, Judge Kliment issued a no-bond warrant for defendant's arrest. Following return of the verdicts, Judge Kliment scheduled the case for posttrial motions and sentencing on December 7, 2022. Defendant failed to appear on December 7, 2022. Mr. Johnson had COVID-19, and the case was continued to January 13, 2023. Defendant failed to appear, but the case was continued to January 25, 2023, due to the court's schedule.

¶ 79    On January 25, 2023, the court entered an order on Mr. Johnson's motion for "reimbursement of fees and expenses." Mr. Johnson argued that the admonishment given to defendant regarding trial *in absentia* was incomplete because defendant was not told "that if he didn't show up in court *** [he would not] be able to confront and cross-examine the witnesses." Mr. Johnson also argued that there was "no record of any arraignment being given to the defendant at all." In response, the State quoted verbatim from section 115-4.1. In reply, Mr. Johnson stated that "there was plenty of time to arraign him. He wasn't arraigned." Mr. Johnson made no argument as to why there was no substantial compliance with section 113-4(e) of the Code. In denying defendant's motion for a new trial, Judge Kliment made no specific ruling regarding trial *in absentia*.

¶ 80                                    II. ANALYSIS

¶ 81    The majority's analysis and holding are directly contrary to our supreme court's holding in *Smith*, 188 Ill. 2d at 343, reaffirmed by the court in *Ramirez*, 214 Ill. 2d 176, 184 (2005). The appellate court has no authority to override our supreme court. *Blumenthal v. Brewer*, 2016 IL

118781, ¶ 22; *People v. Artis*, 232 Ill. 2d 156, 164 (2009). We are required to follow supreme court precedent on an issue "unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court." (Internal quotation marks omitted.) *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 32. The question of what is required by the State to make a showing of "willful absence" to try a defendant *in absentia* has been "deliberately examined and decided" by the supreme court and "should be considered *** closed to further argument." *People v. Hernandez*, 231 Ill. 2d 134, 144 (2008). Therefore, I respectfully dissent.

¶ 82    The majority acknowledges that only "substantial compliance" with section 113-4(e) is required before a trial court may grant a request to try a defendant *in absentia*. *Supra* ¶ 35. Yet, the majority goes on to conclude that "the full admonishment is expressly required by the statute" and that, because defendant "never received one of the two components of the statutorily required admonition," his conviction must be reversed. (Emphasis omitted.) *Supra* ¶¶ 34-35. By requiring the trial court to provide the "full admonishment," the majority requires "strict," and not "substantial" compliance with section 113-4(e). See *People v. Gorss*, 2022 IL 126464, ¶ 18 (interpreting Ill. S. Ct. R. 604(d) (eff. July 1, 2017)). The fact that the legislature intended that both portions of the admonishment be given does not mean that the failure to provide the full admonishment must result in reversal of a defendant's conviction, where the record shows that the defendant was fully aware that he or she had a right to be present and that his or her failure to appear on his trial date could result in trial in his or her absence. The majority analysis, particularly its discussion of *Broyld* (*supra* ¶¶ 29-34), is at odds with this court's discussion in *Montes* (panel of Justices Jorgensen, Hutchinson, and Schostok), where this court cited *Broyld* for the proposition that "reversal [is] not required where [the] 'imperfect admonishment' informed the defendant that a trial could proceed in her absence but not that, by failing to appear, she would be waiving her

right to confront the witnesses against her." (Emphasis omitted.) *Montes*, 2013 IL App (2d) 111132, ¶ 56 (quoting *Broyld*, 146 Ill. App. 3d at 698).

¶ 83 As our supreme court stated repeatedly, "[t]he process of statutory construction requires more than mechanical application of a rule of law or a decision of this court. We have an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended." *People v. Hunter*, 2017 IL 121306, ¶ 28. Reversal of defendant's conviction would clearly be an unjust result where he was well aware of his obligation to appear for trial.

¶ 84 Every district of the appellate court that has addressed the precise issue in this case (concerning the failure to include the right-to-confront admonishment) has ruled that the omission does not render the admonishment deficient where the defendant has been admonished regarding trial *in absentia*. See *Broyld*, 146 Ill. App. 3d 693; *Liss*, 2012 IL App (2d) 101191, ¶ 19; *Coppage*, 187 Ill. App. 3d 436; *Clark*, 96 Ill. App. 3d 491.

¶ 85 In *Coppage*, the defendant was tried *in absentia* in a bench trial for burglary. On appeal, he argued that his conviction should be reversed because he was not properly admonished pursuant to section 113-4(e). The defendant was notified of his trial date by certified mail pursuant to section 115-4.1 (Ill. Rev. Stat. 1985, ch. 38, ¶ 115-4.1(a) (now 725 ILCS 5/115-4.1(a) (West 2020))). The record showed that, at the defendant's preliminary hearing, the prosecutor mentioned that his " 'file [did] not indicate the defendant ha[d] been admonished regarding trial *in* [*absentia*].' " *Coppage*, 187 Ill. App. 3d at 439.

¶ 86 The trial court then stated, " 'Mr. Coppage, the State is referring to a statute which allows them to try you in your absence if you fial [*sic*] to appear for court. So make sure you make all your court dates.' " *Id.* On appeal, the defendant conceded he was given this admonishment but

argued, as defendant does here, that the admonishment was insufficient. He argued "that only strict compliance with the statute protects a defendant's constitutional rights and, thus, the cases which approve only substantial compliance, namely *People v. Broyld* (1986), 146 Ill. App. 3d 693 ***, *People v. Clark* (1981), 96 Ill. App. 3d 491 ***, and *People v. Powell* (1981), 95 Ill. App. 3d 93 ***, were decided incorrectly." *Id.* at 442. The First District rejected the defendant's argument and stated:

> "We construe this provision to be a directive to the trial courts to notify defendants of their constitutional right to be present at their own trial, as well as caution them that they may forfeit that right by their willful absence. The exact wording used by the court to convey this message to defendant should be scrutinized to determine whether it sufficiently apprises the defendant of his right to be present so that a subsequent willful absence may be interpreted as a knowing waiver. However, the specific words used are not important as long as it is apparent that defendant was made aware that he has the right to be present at his trial but that his absence need not preclude the court from proceeding. Since defendant was advised to appear for all court dates and informed that trial could proceed without him, we find that there was substantial compliance with the statute and that defendant's rights were sufficiently protected." *Id.* at 442-43.

"It is not necessary that the court admonish the defendant that his or her right to confrontation will be lost if the defendant fails to appear at trial, as this is obvious." 6 Linda S. Pieczynski, Illinois Practice, Criminal Practice & Procedure, § 26:110 (2d ed. 2023 Update) (citing *Broyld*, 146 Ill. App. 3d 693).

¶ 87    In *Smith*, our supreme court adopted the three-part test developed by the appellate court to determine whether the State has established a *prima facie* case of a defendant's willful absence. The court stated:

> "Shortly after section 115-4.1 was amended in 1979, our appellate court developed a three-part test to determine whether the State has established a *prima facie* case of a defendant's willful absence within the meaning of that statutory provision. To establish a *prima facie* case of willful absence, the State must demonstrate that the defendant: (1) was advised of the trial date; (2) was advised that failure to appear could result in trial *in absentia*; and (3) did not appear for trial when the case was called. [Citations.] The appellate court has also held that '[o]nly if the defendant introduces some evidence that [the defendant] did not act wilfully should more be required of the State.' [Citations.]" *Smith*, 188 Ill. 2d at 342-43.

¶ 88    In the preceding paragraph, our supreme court discussed section 113-4(e)'s requirement that,

> "when a defendant enters a plea of not guilty, the trial court shall advise the defendant that[,] if he or she is released on bond and fails to make required court appearances, the defendant's failure to appear constitutes waiver of the right to confront witnesses and that the failure to appear also permits the trial court to proceed in the defendant's absence." *Id.* at 342.

Thus, it is clear that the supreme court did not intend that, in order to try a defendant *in absentia*, he or she must be advised that failure to appear could result in waiver of the right to confront witnesses. "Failure to admonish the defendant about the loss of confrontation rights if he failed to appear for the trial is not a failure to comply with the statutory requirements." Robert S. Hunter,

Mark A Shureing, Joshua L. Jones, Trial Handbook for Illinois Lawyers—Criminal § 13:4 (Nov. 2023 Update).[4]

¶ 89    In determining whether there has been substantial compliance with an admonishment, our supreme court has stated that, "[s]o long as the court's admonitions were sufficient to impart to a defendant the essence or substance of the rule, the court has substantially complied with the rule." *Dominguez*, 2012 IL 111336, ¶ 23. (interpreting Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001)). "Substantial compliance means such compliance as will assure that the beneficial effect of the rule will be achieved." *People v. Mehmedoski*, 207 Ill. App. 3d 275, 280 (1990). In other words, did the admonishments, "while not perfect, largely specif[y] the essence of the rule." *Dominguez*, 2012 IL 111336, ¶ 20 (citing *In re J.T.*, 221 Ill. 2d 338, 347-48 (2006)). The majority does not explain how the admonishments provided to defendant did not achieve the beneficial effect or specify the essence of the rule.

¶ 90    In this case, it is abundantly clear that defendant knew he was required to appear and that his failure to do so could result in a trial in his absence. It is not unusual at all for a trial court to omit the portion of the admonishment referencing the right to confront witnesses. The majority's requirement that it must be given regardless of the import on a defendant's rights is contrary to all existing precedent. Our supreme court has "articulated the principle that a trial court's failure to give proper admonishments does not necessarily require reversal in every instance." *People v. Henderson*, 217 Ill. 2d 449, 458 (2005) (citing *People v. Davis*, 145 Ill. 2d 240 (1991)). In *Davis*, our supreme court addressed an incomplete admonishment under Rule 402. The court stated,

---

[4]It is not unusual at all for trial courts to consult up-to-date secondary sources such as Hunter's Trial Handbook for Illinois Lawyers—Criminal.

"Whether reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment." *Davis*, 145 Ill. 2d at 250. Clearly, in this case, "real justice" has not been denied, and defendant does not argue that he was prejudiced by the incomplete admonishment. "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page*, 390 U.S. 719, 725 (1968). It is a matter of common sense that you cannot exercise the right of confrontation unless you are present at trial to assist your attorney in questioning the State's witnesses. Section 115-4.1 requires that an absent defendant be represented by counsel and that all procedural rights guaranteed by the constitutions of the United States and the State of Illinois, as well as the rules, apply to the proceedings "the same as if the defendant were present in court." 725 ILCS 5/115-4.1(a) (West 2020).

¶ 91    Neither party in this case requested oral argument. On this court's own motion, we scheduled oral argument and directed the parties to "be prepared to discuss Supreme Court Rule 402(a)(4) (Pleas of Guilty or Stipulations Sufficient to Convict), specifically the requirement that the trial court inform the defendant that, by pleading guilty, 'he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her' as interpreted by the supreme court in *People v. Mendoza*, 48 Ill. 2d 371 (1971) and this court in *People v. Stice*, 160 Ill. App. 3d 132, 135-36 (1987)." In their briefs, neither party had addressed the Illinois Supreme Court Rule 402(a)(4) (eff. July 1, 2012) admonishment and the case law interpreting it. Rule 402(a)(4) provides "(4) that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her." *Id.*

¶ 92 In *People v. Mendoza*, our supreme court held that the trial court's failure to specifically admonish the defendant that, by pleading guilty, he was "simultaneously waiving additional constitutional rights, including the privilege against self-incrimination and the right to confront his accusers," did not require reversal where the record "shows substantial compliance with our Rule 402." *People v. Mendoza*, 48 Ill. 2d 371, 373 (1971). In *People v. Stice*, the appellate court held that "the judge's failure to tell the defendant that, in waiving his right to trial, he was waiving his right to confront his accusers did not constitute a substantial defect in the admonitions." *People v. Stice*, 160 Ill. App. 3d 132, 136 (1987).

¶ 93 At oral argument, defense counsel was asked, "What waiver is more impactful on the defendant's rights, waiving the right to be present at trial or waiving the right to a trial of any kind under Supreme Court Rule 402?" Defense counsel responded that "Rule 402(a) and guilty pleas and trials *in absentia* provide completely different situations." Counsel added that "with pleas of guilty you're waiving a whole bunch of stuff" and "the case is essentially over at that point. With trials *in absentia* a defendant still has rights and you're still going to trial." Counsel added that, "if case law from Rule 402 should be applied, the general assembly would have told us."

¶ 94 During oral argument, defense counsel was asked why we should not follow this court's alternative holding in *Liss*. *Liss*, 2012 IL App (2d) 101191, ¶ 19 ("even if the defendant were not admonished about his confrontation rights, as he contends, our result would not change"). Defense counsel argued that "*Garner* makes it absolutely clear that you have to waive both your right to confront witnesses and the right to be present at trial." Counsel was asked, "Where in *Garner* does it say that?" Counsel responded, "I don't have a direct pin cite," but he quoted the *Garner* court's reference to the legislative history. Counsel made clear that defendant was not arguing that the failure to arraign was the pertinent error.

¶ 95     The State argued that the case law interpreting Rule 402 supported its position. The State argued that defense counsel was misreading *Phillips* and *Garner* because those cases do not stand for the proposition that both parts of the section 113-4(e) admonishments must be given. The State argued that there was substantial compliance with section 113-4(e). The State argued that all of the case law under section 113-4(e) and Rule 402 supported the State's position. With respect to defendant's argument that the failure to arraign was error, the State argued that section 115-4.1 trumps that argument because that section does not require an arraignment before proceeding to trial *in absentia*. 725 ILCS 5/115-4.1 (West 2020) (absence of defendant). The State argued that defendant has not shown any prejudice.

¶ 96     In reply, defense counsel argued that both *Garner* and *Phillips* supported defendant's position that both parts of section 113-4(e) admonishments must be given in order to demonstrate substantial compliance. Counsel argued that defendant was not required to demonstrate prejudice because there was no substantial compliance. Counsel was asked, if *Garner* required that both portions of the admonishment be given, why would the supreme court cite *Velasco*, 184 Ill. App. 3d 618, for that proposition where in *Velasco* the defendant was not admonished regarding the right to confront. Defense counsel responded that he was not sure but believed the supreme court was referring to the legislative scheme. See *Garner*, 147 Ill. 2d at 477.

¶ 97     Contrary to defendant's argument, neither *Garner* nor *Phillips* support defendant's argument that substantial compliance requires that both portions of the admonishment be given. As the State argued, that would eliminate the doctrine of substantial compliance. "An otherwise inadequate admonition may be constitutionally sufficient, and therefore does not constitute error, if the absence of a detail did not impede the defendant from giving a knowing and intelligent

waiver." *Pike*, 2016 IL App (1st) 122626, ¶ 113 (interpreting Illinois Supreme Court Rule 401 (eff. July 1, 1984) ("Waiver of Counsel") and citing *People v. Black*, 2011 IL App (5th) 080089, ¶ 20).

¶ 98    In *Garner*, the State sought to carve out an exception to the section 113-4(e) admonishment exception for "experienced criminals." *Garner*, 147 Ill. 2d at 475. The Illinois Supreme Court rejected the State's argument, stating that "[t]he legislature has made no exception to the rule requiring that defendants be admonished of the possibility of trial *in absentia*." *Id.* at 476. The court rejected the argument that, by failing to appear after arraignment, a defendant waives "any right to be admonished." *Id.* Citing *Lester*, the court stated, "Since waiver assumes knowledge, a defendant who has not received notice of the possibility *of trial in absentia* cannot be deemed to have knowingly waived his right to be present at trial." (Emphasis added.) *Garner*, 147 Ill. 2d at 477 (citing *Lester*, 165 Ill. App. 3d at 1058-59). The supreme court also rejected the State's argument that the notice on the defendant's bond slip provided sufficient "knowledge that he could be tried *in absentia*." *Id.* at 478. The court stated:

> "We have reviewed the bond slip in this case. Most assuredly, the bond slip states that [the] defendant should appear on June 30, 1981. Additionally, the slip provides a warning of the penalties for failure to appear. Noticeably absent from the slip, however, is any warning of the possibility of trial *in absentia*. Thus, we find that the bond slip does not satisfy the requirement of section 113-4(e)." *Id.* at 478-79 (citing 17 Ariz. Rev. Stat. Ann., Form VI, at 737 (1987) (warning of possibility of trial *in absentia* included on bond slip, which defendant was required to sign upon release)).

The court stated that "[a] defendant can hardly be dissuaded from absenting himself from trial where he does not know that trial may proceed in his absence." *Id.* at 482. In its conclusion, the court stated that

"[i]n order for a trial to proceed *in absentia*, the defendant must first be informed of his right to be present and have knowingly and intelligently waived that right. Absent a knowing and intelligent waiver, the defendant's statutory right to be *notified he could be tried in absentia* is violated. Section 113-4(e) serves as the procedural mechanism to effect a formal waiver of the right to be present." (Emphasis added.) *Id.* at 483.

¶ 99 Citing *Velasco*, the *Garner* court stated that "it is clear that the legislative scheme is designed to insure that trial in the defendant's absence is not held unless defendant has made a valid waiver of his right to be present at trial and to confront witnesses against him." *Garner*, 147 Ill. 2d at 483 (citing *Velasco*, 184 Ill. App. 3d at 626). In *Velasco*, the defendant appeared at a proceeding when his trial date was set. The trial court admonished the defendant as follows:

" 'THE COURT: Do you understand, Mr. Velasco, that you are now on bond[;] if on the 10th you should not be present your case would be tried anyway, do you know that?

DEFENDANT: I understand.

COURT: Before a jury. And if the jury found you guilty, you would be sentenced and thereafter when you were apprehended you would be brought directly to a penitentiary if that were the case, you would not come back to court. So, in other words, your case would go on whether you're here or not. So have that in mind.' " *Velasco*, 184 Ill. App. 3d at 625.

¶ 100 It is obvious that, by citing *Velasco*, our supreme court believed the admonishment provided to the defendant satisfied the 113-4(e) requirement and allowed the trial court to find that the defendant's absence was willful and he was waiving his right to be present at trial and the right to confront witnesses. In *Garner*, the trial court failed to provide any *in absentia* warning to the defendant at arraignment or at any later time after arraignment and thus "failed to admonish

defendant pursuant to section 113-4(e)" and "committed reversible error." *Garner*, 147 Ill. 2d at 484.

¶ 101 In *Phillips*, our supreme court rejected the State's argument that a bond slip containing a form consistent with the language in section 113-4(e) constituted substantial compliance with the statute. The court noted that it had rejected a similar argument in *Garner*, where the bond slip "did not provide *any* warning of the possibility of trial *in absentia*." (Emphasis added.) *Phillips*, 242 Ill. 2d at 197 (citing *Garner*, 147 Ill. 2d at 478). Our supreme court agreed with the Fourth District's decision in *Lester*, which concluded that section 113-4(e) "unambiguously requires the trial court to orally admonish the defendant in court and that the *complete failure to comply* with this portion of the statute did not constitute sufficient compliance with the Code." (Emphasis added.) *Id.* at 198 (citing *Lester*, 165 Ill. App. 3d at 1057-59).

¶ 102 *Phillips* overruled this court's holding in *Condon*, 272 Ill. App. 3d 437, that written admonishments alone are sufficient to satisfy the requirements of section 113-4(e). However, the *Phillips* court noted that, in *Condon*, the trial court "later orally admonished [the defendant] that the proceedings could go forward in his absence and reminded him of his obligation to appear in court." *Phillips*, 242 Ill. 2d at 201. *In* Condon, *neither the bond form nor the oral admonishment mentioned waiver of the right to confront witnesses, yet the supreme court approved the oral admonishment that was later given to the defendant.* In *Condon*, the trial court gave the following oral admonishment:

" 'THE COURT: All right. There was previously a non-appearance by the Defendant. The Defendant has already previously been admonished that if he doesn't appear, he is subject to the issuance of a warrant, and also the proceedings can go forward in his absence.

Tell me your name, please, sir.

DEFENDANT CONDON: Bernard Condon.

THE COURT: Mr. Condon, you understand it is your obligation to appear in court on whatever court date is set, and not the obligation of the attorney or clerk or anyone else to tell you; it is your obligation to find out what that date is and to be here; do you understand that?

DEFENDANT CONDON: Yes, sir.' " *Condon*, 272 Ill. App. 3d at 442.

By reversing only that portion of *Condon* dealing with the bond slip and citing the in-court oral admonishment, our supreme court must have been satisfied that the admonishment substantially complied with section 113-4(e), otherwise the court would have overruled *Condon* in its entirety. In *Condon*, the defendant argued that the admonishment was deficient because the court stated only that "the proceedings can go forward" and not that "the trial can go forward." *Id.*

¶ 103   In *Phillips* and *Garner*, the supreme court stated that " '[t]he primary purpose of section 113-4(e), as evidenced by the legislative history, is to prevent "bail jumping" and to promote the speedy satisfaction of judgment.' " *Phillips*, 242 Ill. 2d at 196 (quoting *Garner*, 147 Ill. 2d at 481, citing 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 151 (statements of Representative Kosinkski), at 153 (statements of Representative McAuliffe)). The court stated that a "section 113-4(e) admonishment serves as the procedural mechanism to effect a formal waiver of a *defendant's right to be present*." (Emphasis added.) *Id.* at 197 (citing *Garner*, 147 Ill. 2d at 483). The supreme court explained that, in *Garner*, the court rejected the State's argument that the bond slip was sufficient to satisfy the admonishment requirement in section 113-4(e) because, "while it provided a warning of the penalties for failures to appear, it did not provide *any warning of the possibility of trial in absentia*." (Emphasis added.) *Id.* (citing *Garner*, 147 Ill. 2d at 478).

¶ 104   It is clear from all of the supreme court precedent that the "essence of the rule" is that the defendant understands that, if he or she fails to appear, trial may proceed in his or her absence.

¶ 105   This court explained in *Liss* that sections 113-4(e) and 115-4.1 "were designed to balance a defendant's constitutional right to be present at trial with the State's interest in the ' "expeditious administration of justice." ' " *Liss*, 2012 IL App (2d) 101191, ¶ 13 (quoting *Smith*, 188 Ill. 2d at 342, quoting *Partee*, 125 Ill. 2d at 40).

¶ 106   When the supreme court reaffirmed the three-part test adopted in *Smith*, the wording was identical—again, no requirement that the defendant be informed of the confrontation right. *Ramirez*, 214 Ill. 2d at 184. The majority also forgets that *Smith* and *Ramirez* were decided several years after *Garner*. The majority states that the *Garner* "court could have omitted the clause about confronting witnesses but did not." *Supra* ¶ 37. What the majority should recognize is that the supreme court could have included the phrase about confronting witnesses when it decided *Smith*, and later *Ramirez*, but did not. To the extent the majority relies on *Garner* to support its holding, *Smith* and *Ramirez* conflict with its conclusion and must be followed. See *People v. Molina*, 2022 IL App (4th) 220152, ¶ 22 (the appellate court " 'must follow the lead of [the supreme court]' " (quoting *People v. Rowell*, 2021 Il App (4th) 180819, ¶ 26)).

¶ 107   In the cases our supreme court cited in *Smith* that employed the three-part test to establish a *prima facie* case for willful absence, the court included *Broyld* and *Coppage*. In both of those cases, the appellate court rejected the argument that the *in absentia* admonishment must include mention of the right to confront witnesses. See *Coppage*, 187 Ill. App. 3d at 442; *Broyld*, 146 Ill. App. 3d at 698 ("no reversible error resulted from trying this defendant after the imperfect admonishment"). The supreme court would not have cited *Coppage* as support for the three-part

willfulness test if the court did not approve of *Coppage*'s express holding that there was substantial compliance.

¶ 108   *Smith* is still the law and has been frequently cited for the three-part test to establish a *prima facie* case for willful absence. See *People v. Johnson*, 2018 IL App (2d) 160674, ¶¶ 5, 12 (defendant "was admonished that, if he did not appear for trial, he could be tried *** in his absence"); *People v. Talidis*, 2023 IL App (4th) 230047-U, ¶ 32.

¶ 109   The language used by the trial court here, both by Judge Flood and Judge Tegler, clearly conveyed to defendant that his presence at trial was required. In granting the State's requests to proceed *in absentia*, the trial court followed established precedent, particularly *Smith*, which Mr. Johnson provided to the court.

¶ 110   In *People v. Delvillar*, 235 Ill. 2d 507, 514-15 (2009) (citing *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990), the supreme court explained that a statute is mandatory "if the intent of the legislature dictates a particular consequence for failure to comply with the provision." "In the absence of such intent, the statute is directory and no particular consequence flows from noncompliance. That is not to say, however, that there are no consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute." (Emphasis omitted.) *Id.* at 515. In *Delvillar*, the trial court failed to advise the defendant, when he pled guilty, of the potential consequences that he could face as a noncitizen, as required by section 113-8. 725 ILCS 5/113-8 (West 2020). The appellate court reversed the defendant's conviction, holding that the admonishment was mandatory. *People v. Delvillar*, 383 Ill. App. 3d 80, 89 (2008). The supreme court reversed, holding that, while

> "section 113-8 is mandatory in that it imposes an obligation on the circuit court to admonish all defendants of the potential immigration consequences of a guilty plea, *** [it] is not

mandatory with respect to the mandatory-directory dichotomy. Thus, failing to issue the admonishment does not automatically require the court to allow a motion to withdraw a guilty plea." *Delvillar*, 235 Ill. 2d at 519.

¶ 111 Section 113-4(e), like section 113-8, does not trigger any particular consequence that flows from noncompliance. As the State notes, section 115-4.1(a) does not even require an arraignment. A defendant can be tried *in absentia* after his "initial court appearance," so long as the State can prove willful absence. 725 ILCS 5/115-4.1(a) (West 2020). Of course, if there is a complete failure to admonish a defendant of the possibility of trial *in absentia*, then the State may not be able to establish willful absence under section 115-4.1 as articulated in *Smith*. As the supreme court stated in *Delvillar*, "the failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea." *Delvillar*, 235 Ill. 2d at 520. Our focus is on whether the State showed that defendant was "willfully avoiding trial." 725 ILCS 5/115-4.1(a) (West 2020); see *Delvillar*, 235 Ill. 2d at 520 ("a reviewing court focuses on whether the guilty plea was affirmatively shown to have been made voluntarily and intelligently").

¶ 112 The legislature is presumed to be aware of judicial decisions interpreting legislation, and if the legislature reenacts a statute without modification, it is "assumed that any construction of the statutory language by this court will continue to be in effect." *People v. Reese*, 2017 IL 120011, ¶ 95 (Burke, J., concurring in part and dissenting in part). If the general assembly believed that section 113-4(e)'s admonishment was a prerequisite to granting the State's request to proceed to trial *in absentia*, it would have amended section 115-4.1 to say so. Section 115-4.1 was reenacted as part of Public Act 101-652, § 10-255 (eff. Jan. 1, 2023) (amending 725 ILCS 5/115-4.1). No changes to require the admonishment were made. Section 115-4.1 is the specific provision

governing trials *in absentia*. Thus, the three-part test adopted by our supreme court in *Smith* continues to be the law.

¶ 113   In *Lester*, 165 Ill. App. 3d 1056, which the supreme court cited in *Phillips*, 242 Ill. 2d at 198, for the proposition that *in absentia* admonishments must be given orally in court, the appellate court compared Rule 402 admonishments to admonishments in section 113-4(e). The court said:

> "The rule, like the statute here, requires that the trial judge personally address defendant in open court informing him of and making sure he understands these rights. If a plea of guilty cannot stand without actual admonishment by the trial court it would be anomalous to permit a trial *in absentia* when the same defect exists. Because waiver assumes knowledge, *a defendant who has not received notice of the possibility of trial in absentia* cannot be deemed to have knowingly waived his right to be present at trial." (Emphasis added.) *Lester*, 165 Ill. App. 3d at 1059.

¶ 114   In interpreting the language of a statute or rule, courts look to similar provisions in other statutes or rules. *Hawkins*, 2011 IL 110792, ¶ 24. I believe the case law applying and interpreting Rule 402(a)(4) is applicable because it involves the same analysis: does the record show that defendant made a knowing waiver of his right to confront witnesses, even where that portion of the admonishment was not given by the trial court?

¶ 115   In *People v. Unger*, 23 Ill. App. 3d 525 (1974), the defendant raised several issues regarding the voluntariness of his guilty plea. Among the issues he raised was that "the trial court erred in failing to admonish the defendant that by pleading guilty he waived his right to be confronted with the witnesses against him." *Id.* at 529. This court rejected the defendant's claim. *Id.* (citing *Mendoza*, 48 Ill. 2d at 373). We noted that, while *Mendoza* was a postconviction case, the same principles applied. *Id.* at 530 (" ' "It is not the policy of this court to reverse judgment of

conviction merely because error was committed unless it appears that real justice has been denied \*\*\*." ' " (quoting *People v. Dudley*, 58 Ill. 2d 57, 61 (1974), quoting *People v. Morehead*, 45 Ill. 2d 326, 332 (1970))).

¶ 116    Defendant's argument that his conviction should be reversed because the trial court did not advise him that he would be waiving his right to confront witnesses is specious. The State clearly satisfied the three-part test outlined in *Smith*. Defendant did not introduce any evidence that he did not act willfully. *Smith*, 188 Ill. 2d at 343. Defendant does not argue that he was unaware of the fact that his opportunity to "confront witnesses against him" would be at trial. As the appellate court noted in *People v. Miller*, 107 Ill. App. 3d 1078, 1086 (1982), and as the State argues here:

> "The People argue persuasively that the trial judge's admonition to defendant that a plea
> of guilty would waive his right to a trial would make it clear that the plea would also waive
> those rights that are ancillary to a trial. Thus, it has been held that failure to inform a
> defendant that by pleading guilty he would waive his right to be confronted by witnesses
> is not reversible error [citation], and that a trial court is not required to admonish a
> defendant specifically of his privilege against self-incrimination."

¶ 117    I briefly address an argument made by the State that the majority has overlooked. The State points out that defendant was originally charged with misdemeanor battery, based on the same conduct alleged in this case and case No. 21-CM-261, which was pending from the date of defendant's arrest until April 28, 2021, when it was consolidated with this case and then nol-prossed. The State points out that defendant has not provided a record of the misdemeanor proceedings "on appeal where he may have entered a formal not guilty plea to the offense." The State cites *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984), for the proposition that "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant."

¶ 118    Defendant responds to the State's *Foutch* argument by stating that "even if [defendant] was arraigned while the offense was still charged as a misdemeanor, there is still no indication that he was admonished in accordance with the mandate of section 113-4(e) as to trial *in absentia* at or after that arraignment." Defendant forgets that it is the responsibility of defendant, as the appellant, to provide a sufficiently complete record. *Id.* at 391.

¶ 119    Where admonishments are given pursuant to section 113-4(e) in proceedings related to the conduct for which a defendant is convicted, they are "sufficient to validate his waiver and legitimize the trial that was held in his absence." *People v. Cobian*, 2012 IL App (1st) 980535, ¶ 15. Defendant offers no explanation for the failure to include the record from the misdemeanor case, even after the State has pointed out the omission in its response brief. *People v. Martinez*, 361 Ill. App. 3d 424 (2005) (defendant had the opportunity to supplement the record with a bystander's report).

¶ 120    Finally, in a single paragraph, the majority dismisses my reliance on cases interpreting Rule 402, stating, "In our view, a defendant choosing to accept a conviction in exchange for a benefit is not more prejudiced by an imperfect admonishment than a defendant who is tried by the State and convicted in his or her absence." *Supra* ¶ 42. Defendant here has not argued prejudice. At oral argument, defense counsel argued that defendant did not have to demonstrate prejudice because there was no substantial compliance. The majority forgets that Rule 402(a)(4) applies to all guilty pleas, not just defendants who get a favorable plea offer. The admonishments required by Rule 402 for a guilty plea are equally, if not more, important than the admonishment required by section 113-4(e). A defendant who skips out on trial still has a right to trial by jury, to be represented by counsel, and to all other rights guaranteed by the constitution, statutes, and court rules. 725 ILCS 5/115-4.1(a) (West 2020).

¶ 121   The majority argues that my position "would negate a statutory mandate." *Supra* ¶ 34. To the contrary, I believe trial courts are required to give the full admonishment, but the failure to do so should not result in the reversal of a conviction unless the defendant can demonstrate prejudice. See *Smith*, 188 Ill. 2d at 343.

¶ 122   The majority fails to even discuss the specific provisions governing trials *in absentia*, section 115-4.1(a). That is perhaps because that statute does not support the majority's position. The general rule is that, when two statutes conflict, the more specific statute controls. *Centrue Bank v. Voga*, 2020 IL App (2d) 190108, ¶ 39. Also, when two statutes conflict, reviewing courts must construe them in harmony with one another if reasonably possible. *In re Craig H.*, 2022 IL 126256, ¶ 26. That is precisely what the supreme court did in *Smith*, 188 Ill. 2d at 342-43.

¶ 123   It is not uncommon in reviewing criminal case transcripts to see trial courts providing the admonishment that the defendant can be tried in his or her absence if he or she fails to appear but omitting the admonishment that he or she is also waiving the right to confront witnesses. The General Assembly, in enacting section 115-4.1, "wanted to remove any benefit to a defendant who flouts the criminal justice system by jumping bail." *People v. Eppinger*, 2013 IL 114121, ¶ 39. The majority rewards defendant with a new trial in the absence of any evidence or argument that he suffered prejudice.

¶ 124   I agree with the majority that the better practice is to give the full admonishment at arraignment. In fact, the full admonishment should be given at the first appearance, unless there is an indication that the parties contemplated a plea of guilty, which is what occurred in this case.[5]

---

[5]The majority cites *Lane*, 2011 IL App (3d) 080858, where the Third District reversed the defendant's conviction because he was not given section 113-4(e) admonishments at arraignment

The trial court's admonishment substantially complied with section 113-4(e), section 115-4.1(a), and *Smith*. I would affirm defendant's conviction.

---

or after. The court held that the admonishments given on the date of the defendant's arrest did not comply with section 113-4(e). This holding conflicts with section 115-4.1 and *Smith*.

*People v. Heitschold*, **2024 IL App (2d) 230047**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 21-CF-608; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Elliot A. Borchardt, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and David Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |